ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A Professional Corporation
Paul M. Loya (State Bar No. 57652)
Marleen L. Sacks (State Bar No. 161388)
5075 Hopyard Road, Suite 210
Pleasanton, California 94588-2797
Telephone: (925) 227-9200
Facsimile: (925) 227-9202

Attorneys for Defendants

LEGAL SERVICES FOR CHILDREN
Abigail Trillin (State Bar No. 179052)
1254 Market Street, 3rd Floor
San Francisco, California 94102
Telephone: (415) 863-3762

YOUTH & EDUCATION LAW PROJECT
William S. Koski (State Bar No. 166061)
559 Nathan Abbott Way
Stanford, California 94305
Telephone: (650) 724-3718

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YARMAN SMITH, a Minor, by LUGERTHA SMITH, his guardian and litem, et al., <br><br> Plaintiffs, <br><br> vs. <br><br> THE BOARD OF EDUCATION OF THE BERKELEY UNIFIED SCHOOL DISTRICT, et al., <br><br> Defendants. | CASE NO. C 04-3306 WDB <br><br> **JOINT MOTION FOR TERMINATION OF CONSENT DECREE AND REQUEST FOR HEARING** |

Plaintiffs Yarman Smith, Lugertha Smith, Juan Muñoz, Margarita Chavez, Summer McNeil, and Senobia Augustine (hereinafter collectively "Plaintiffs" or "Class Members"), and Defendants Berkeley Unified School District; Members of the Board of Education of the Berkeley Unified School District; (hereinafter collectively "Defendants" or the "District"), hereby jointly submit this motion, requesting that the Court terminate/lift the consent decree that was originally stipulated to and approved by the Court in 2005. A copy of the applicable Consent Decree is attached hereto as Exhibit A.

## I. PROCEDURAL HISTORY

Plaintiffs initially filed this action in the U.S. District Court for the Northern District of California on August 13, 2004, pursuant to 42 U.S.C. section 1983, seeking relief and damages against the District for its alleged failure to provide Plaintiffs and those similarly situated with their constitutional and statutory right to due process prior to excluding them from school and/or reassigning them from comprehensive school programs to county community schools, continuation schools, home-hospital instruction programs and independent study programs ("Non-Comprehensive Alternative Programs"), in the context of student discipline. Plaintiffs alleged that the District's policies had a disparate negative impact on African American and Latino students. Plaintiffs' Complaint alleged discrimination on the basis of race, ethnic group identification, or color in violation of the Fourteenth Amendment to the United States Constitution, Article 1, section 7, of the California Constitution, and the California Government Code sections 11135-111139.5 and its implementing regulations at Title 22, sections 98000 *et seq.* of the California Code of Regulations. (*Id*.) On October 14, 2004, Defendants filed an Answer to Plaintiffs' Complaint, denying the allegations that their policies and practices violated the law.

The Parties agreed to participate in a formal mediation process, and arranged for the Honorable Read Ambler, of JAMS Resolution Center, to assist them in resolving the remaining disputes. (*See* Stipulation & Order Selecting ADR Process.) On December 20, 2004, Judge Ambler, counsel for Plaintiffs, Superintendent Lawrence, and counsel for Defendants met in Berkeley and reached resolution on the major principles embodied in the Consent Decree. Final

settlement was reached in March 2005.

The required class action notices were posted on June 2 and June 3, 2005. The settlement was formally approved by the Court pursuant to FRCP 23(e) in August 2005, following the filing of a joint motion. In October 2005, the District submitted its initial proposal for the "Disparity Action Plan," called for under the terms of the Consent Decree, and the parties met and conferred extensively until it was finalized in April 2006, and submitted to the Court.

The first "Monitoring Committee" meeting, called for under the terms of the Consent Decree, was held on August 14, 2006. After acting under the terms of the Consent Decree for more than the required six semesters (three years), in March 2009, the District requested that the parties jointly petition this Court for lifting of the Consent Decree. Since then, the District has been meeting and conferring with Plaintiffs' counsel to resolve any outstanding concerns. Following this meet and confer process, the parties have agreed jointly to file this motion requesting termination of the Consent Decree.

## II. THE REQUIREMENTS OF THE CONSENT DECREE HAVE BEEN MET

Section VI of the Consent Decree provides as follows:

> After proceeding under the terms of this Consent Decree for at least six consecutive semesters (three years), if the District believes that it has achieved full compliance with this Consent Decree, the District may issue a report to Plaintiffs' counsel, the Monitoring Committee, and the Court documenting such full compliance. The Parties or the District may then move the Court for an order terminating this litigation and Consent Decree, and dismissal of the litigation with prejudice. The Court shall conduct a hearing to determine whether the District has achieved full compliance with this Decree. The District shall demonstrate to the Court's satisfaction that this Decree has been implemented, that all requirements have been met, and that it has achieved compliance with the Consent Decree. Upon the conclusion of the hearing, the Court may enter any further orders it deems appropriate, including, but not limited to, an order terminating this Consent Decree and its jurisdiction, on order continuing jurisdiction, or an order modifying the Consent Decree.

The requirements of the Consent Decree are outlined in Sections III and IV of the Consent Decree itself, and the District's compliance is summarized below and in the attached "Final Summative Report." (Exhibit B.) Additional details supporting the District's compliance can be found in the previously filed "Quarterly Reports."

A. **Identification of and Outreach to Class Members (Consent Decree, Section III(A))**

The Consent Decree provided that the District would reach out to three different populations in order to ensure that any qualifying students would be reinstated and receive compensatory services. The first population, composed of students who were recommended for expulsion, placed in Non-Comprehensive Alternative Programs, or excluded from school entirely for more than five (5) consecutive school days or twenty (20) cumulative school days during either the 2002-03 or 2003-04 academic years, were to receive oral communication and letters in English, Spanish, or the recipients' primary language, as required by California Education Code section 48985. The second population, all students enrolled in District comprehensive and non-comprehensive alternative programs, were to receive letters in English, Spanish, or the recipients' primary language, as required by California Education Code section 48985. Posting at various local government offices and community organizations, and publication in the Berkeley High School <u>Jacket</u> was to serve to inform the third population, the Berkeley community at-large.

The District's compliance with this requirement is outlined on page 5 of the attached Final Summative Report.

B. **Meeting to Determine Whether Students Were Unlawfully Excluded from School (Consent Decree, Section III(B))**

The Consent Decree required that each potential Class Member interested in meeting with the District was to submit a Compensatory Education Claim form to the designated representative. Legal Services for Children and the Youth and Education Law Clinic were to provide potential Class Members pro bono assistance completing the Compensatory Education Claim forms. Within fifteen days of receiving a completed form from a potential Class Member, the District was to promptly schedule and convene a meeting with that student and his or her parent or guardian. At the meeting, the District was to determine whether the student was unlawfully excluded from school.

1  The District's compliance with this requirement is outlined on page 6 of the attached
2  Final Summative Report.

### C. Offer to Immediately Reinstate Unlawfully Excluded Students to Comprehensive Schools (Consent Decree III(C))

The Consent Decree provided that upon determination that a student is a Class Member, the District would immediately offer the student reinstatement to an age- and grade-level appropriate comprehensive educational program within the District, unless reinstatement was not appropriate because of the student's age or residence. The District was to appoint an administrator who would have the authority and responsibility to ensure and facilitate the immediate enrollment of the student.

The District's compliance with this requirement is outlined on page 6 of the Final Summative Report.

### D. Development of Plan for Students to Earn Credits and Receive Compensatory Educational Services (Consent Decree III(D))

The Consent Decree provided for compensatory educational services and academic credit repair for any student found to have been unlawfully deprived of educational services, with the goal of graduating the student on time with his/her age- and grade-level peers.

The District's compliance with this requirement is outlined on page 7 of the Final Summative Report.

### E. Expungement and Modification of Educational Records of Unlawfully Excluded Students (Consent Decree III(E))

The Consent Decree provided that within fifteen (15) days of the determination that a student qualifies as a Class Member, the District would expunge or modify any Class Member's educational records to remove any language indicating that he or she had been properly expelled, and to indicate that any exclusion from comprehensive school for more than five (5) consecutive school days or more than twenty (20) school days in any school year was unlawful, unless such suspension was lawful under the California Education Code. The Class Member would also have the opportunity to submit a written statement to be included in his/her educational record

which explains the circumstances surrounding the student's unlawful exclusion from comprehensive school.

The District's compliance with this requirement is outlined on page 7 of the Final Summative Report.

### F. Establishment of Policies, Procedures and Training Programs to Prevent Unlawful Exclusion of Students from Comprehensive School (Consent Decree III(F))

The Consent Decree provided that the Board of Education would revise the District's suspension/expulsion policies, devise a student suspension/expulsion monitoring system, and draft necessary forms. The District would also conduct comprehensive training with all appropriate staff members and administrators on these new policies.

The District's compliance with this requirement is outlined on pages 7-19 of the Final Summative Report.

### G. Compliance with Due Process Requirements (Consent Decree III(G))

Under the Consent Decree, the District committed not to participate in any practice that would involuntarily exclude students from comprehensive schools or involuntarily reassign them from comprehensive schools to Non-Comprehensive Alternative Programs for disciplinary reasons, without complying with legal due process requirements.

The District's compliance with this requirement is outlined on pages 20-21 of the Final Summative Report.

### H. Plan to Address Racial/Ethnic Disproportionality in School Discipline (Consent Decree III(H))

Because of Plaintiffs' allegations that the District's disciplinary procedures had a disparate impact on African-American and Latino students, the District and Plaintiffs jointly developed a Disparity Action Plan designed to measure, monitor and target these issues. The District's compliance with this requirement, including implementation of its Disparity Action Plan, is outlined on pages 21-58 *et seq.* of the Final Summative Report.

### I. Appeals from District Determinations and Dispute Resolution (Consent Decree III(I))

The Consent Decree provided for a neutral, third-party charged with resolving disputes between individual students or Class Members and the District regarding the implementation of the proposed Consent Decree.

The District's compliance with this requirement is outlined on page 21 of the Final Summative Report.

**J.     Reporting and Oversight**

Under the Consent Decree, the Parties agreed upon a system of District reporting and external monitoring of the District's compliance with the terms of the settlement, including the following:

      a.     Monitoring Committee

The Parties agree to establish a Monitoring Committee consisting of five persons to meet on a quarterly basis throughout the duration of the Consent Decree.  These quarterly meetings would provide an opportunity for reviewing and commenting on District policies, procedures, or forms revised pursuant to the Consent Decree, reviewing and commenting on the District's quarterly reports, and providing comments to the District regarding its efforts to implement the Consent Decree.

      b.     District Reporting

The Consent Decree provided for quarterly reports to be provided to Plaintiffs' counsel, the Monitoring Committee, and the Court.  The reports were to contain narrative detail on the District's efforts to implement the Consent Decree, data reflecting its progress in reducing ethnic/racial disproportionality in school discipline, and data reflecting the number of students who attempted to take advantage of the remedial provisions of the Consent Decree and the outcomes of their efforts. The District has provided those reports to Plaintiffs' counsel, made the requested revisions, and submitted those reports to the Court, where they are currently on file.

**III.   PLAINTIFFS' SEPARATE STATEMENT**

Plaintiffs stipulate to this "Joint Motion for Termination of Consent Decree and Request for Hearing" and stipulate to the relief and order requested by this Joint Motion.  By so stipulating, Plaintiffs do not necessarily agree to the facts contained in the reports attached to this

1  Joint Motion. In addition, for the Court's information, Plaintiffs attach as Exhibit C a letter sent
2  to the Berkeley Unified School District Board of Education and Superintendent detailing
3  Plaintiffs' remaining concerns regarding racial disparities in school discipline and alternative
4  school placement in the District.

## IV. CONCLUSION

Based on this Joint Motion, the exhibits attached hereto, and the pleadings already on file in this action, the parties respectfully request that the Court terminate the litigation and lift the Consent Decree.

DATED: March 3, 2011

Respectfully submitted,

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
Paul M. Loya
Marleen L. Sacks

By: _____/s/_____
    Marleen L. Sacks
    Attorneys for Defendants

DATED: February 16, 2011

Respectfully submitted,

LEGAL SERVICES FOR CHILDREN
Abigail Trillin

YOUTH & EDUCATION LAW PROJECT
William S. Koski

By: _____/s/_____
    William S. Koski
    Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
IT IS SO ORDERED
[signature]
Judge Claudia Wilken